(65 Misc. Rep. 5.)

### EHRLICH v. SKLAMBERG et al.

(Supreme Court, Appellate Term. November 12, 1909.)

**1. BONDS (§ 23\*)—"DELIVERY"—INTENT OF OBLIGOR.**

Whether there has been a "delivery" of a bond depends upon the intent of the obligor to perfect the instrument and make it at once the absolute property of the obligee, and it may be delivered by words without acts, by acts without words, or by both acts and words.

[Ed. Note.—For other cases, see Bonds, Cent. Dig. §§ 21, 22; Dec. Dig. § 23.\*

For other definitions, see Words and Phrases, vol. 2, pp. 1958–1970; vol. 8, p. 7632.]

**2. BONDS (§ 35\*)—STATUTORY BONDS—VALIDITY AS COMMON-LAW BONDS—DEFECTS.**

The failure of a claimant in attachment and his sureties to file his bond or have it approved, as expressly required by Municipal Court Act (Laws 1902, p. 1517, c. 580) § 85, where a copy of the bond was delivered to plaintiff's attorney and approved by him, did not impair its validity as a contract, nor prevent its enforcement as a common-law obligation, even if invalid as a statutory bond; the statutory provision for filing and approval being intended, not for the benefit of the obligor, but for the protection of the obligee.

[Ed. Note.—For other cases, see Bonds, Cent. Dig. § 40; Dec. Dig. § 35.\*]

**3. COURTS (§ 189\*)—MUNICIPAL COURT—ATTACHMENT—LIABILITY ON CLAIMANT'S BOND.**

The claimant having executed a bond for possession of the attached property, which was a good common-law obligation, though not a good statutory bond, plaintiff could look solely to the bond, and was not bound to see that the property was delivered to the claimant, and the fact that the marshal holding it delivered it to the receiver of another, who deliv-

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ered it to the claimant after taking a bond for his own protection, would not relieve the claimant from liability under his common-law obligation, though the fact that he obtained the property circuitously, instead of directly, might render it impossible to hold him upon the statutory bond.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 412; Dec. Dig. § 189.*]

4. COURTS (§ 189*)—MUNICIPAL COURT—ATTACHMENT—LIABILITY ON CLAIM-ANT'S BOND.

That defendant in attachment was adjudicated a bankrupt, and that his receiver claimed the property, or that the receiver subsequently transferred what title he had in the property to claimant, would not affect liability of the obligors on the claimant's bond; it being conditioned that the claimant would, in an action thereon, prove that he was the general owner of the property at the time of seizure, or pay plaintiff the value thereof, as expressly required of claimant's bonds by Municipal Court Act (Laws 1902, p. 1517, c. 580) § 85.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 412; Dec. Dig. § 189.*]

5. COURTS (§ 189*)—MUNICIPAL COURT—ATTACHMENT—ACTION ON CLAIMANT'S BOND—BURDEN OF PROOF.

In an action on the bond of a claimant in attachment, conditioned that claimant would·in an action thereon prove his general ownership of the property at the time of seizure or pay plaintiff the value thereof, the burden of proving his ownership is upon him.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 412; Dec. Dig. § 189.*]

Lehman, J., dissenting.

Appeal from Municipal Court, Borough of Manhattan, Third District.

Action by Abraham Ehrlich against Hyman Sklamberg and another. From a Municipal Court judgment for plaintiff (116 N. Y. Supp. 602), defendants appeal. Affirmed.

See, also, 119 N. Y. Supp. 344.

Argued before GILDERSLEEVE, P. J., and SEABURY and LEHMAN, JJ.

Schenkman & Brown, for appellants.

Charles Traubel, for respondent.

SEABURY, J. This is an action upon an undertaking. The plaintiff brought an action against·one Rinzler, and in that action obtained a warrant of attachment, under which the property therein described was seized by a marshal of the Municipal Court. The defendant Salman, claiming to be the owner of this property, signed with his· codefendant an undertaking which contained the following clause:

"That if, in an action upon the bond commenced within three months thereafter, the said claimant, Sam Salman, will establish that he was the general owner of the property claimed at the time of seizure, or, if he fails so to do, that he will pay to the said Abraham Ehrlich the value thereof, with interest, then the obligation to be void; otherwise, to remain in full force and virtue."

The attorney for the defendant Salman served on the plaintiff's attorney on September 30th a copy of this undertaking, together with a notice that on October 2d the bond would be presented to a justice of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the Municipal Court for approval and justification of sureties. The attorney for the plaintiff made the following indorsement upon the undertaking:

"I hereby approve of the within undertaking, both as to the form thereof and as to the sufficiency of the sureties therein named."

The original bond was delivered to the attorney for the defendant Salman, who did not cause it to be filed, as required by section 85 of the Municipal Court act (Laws 1902, p. 1517, c. 580). Whether the bond was ever approved by a justice of the Municipal Court does not appear from the record which is now before us. On October 1st Rinzler, the defendant in the action in which the plaintiff obtained the attachment, was adjudicated a bankrupt, and at this time the property seized was still in the possession of the marshal. A receiver of the bankrupt's property having been appointed, that officer demanded the possession of the property from the marshal. Pursuant to this demand the marshal delivered the property to the receiver. Subsequently the receiver released all his right, title, and interest in the property as receiver to Salman, upon the latter executing and delivering to him a bond for his protection as receiver.

The learned court below found as a fact:

"That Salman was a party to a fraud to conceal the goods from the creditors of Rinzler, and that the goods in question were taken from Rinzler's premises and hidden in the basement of 167 Essex street, owned by a relative of his, which basement Salman claims to have hired, but which is far removed from the regular place where he conducts business."

The present action was commenced within the three months prescribed in the bond, and the court below has rendered judgment for the plaintiff.

As I understand the argument which is made in favor of the reversal of this judgment, it is based primarily upon the view that there was no delivery of the bond, because only a copy was served on the attorney for the plaintiff and approved by him, and the original was not filed and approved, as required by section 85 of the Municipal Court act. It is, of course, true that a bond is not perfected until it is delivered. It is necessary, therefore, to determine whether there was a delivery of this bond upon which this action is brought. "The essence of the question whether or not there has been a delivery consists in the intent of the obligor to perfect the instrument and make it at once the absolute property of the obligee." 5 Cyc. 740. An instrument may be delivered by words without acts, or by acts without words, or by both acts and words. The opinion delivered in the instructive case of Folly v. Vantuyl, 9 N. J. Law, 153, reviews the authorities upon the question of what constitutes a delivery, and makes it clear that any acts or words evincing an intent to deliver, provided such intent have reference to the present time, is sufficient to constitute a delivery.

· The action of Salman in serving or actually delivering a copy of the bond, which had in fact been signed and sealed by the obligors, and the service of the notice of justification of sureties and obtaining from the attorney for the plaintiff his approval of the bond, are clear, unequivocal acts, which were intended to denote, and did denote, that the ob-

ligors were firmly bound upon the bond. Nothing further remained to be done but the formal act prescribed by the statute, that the claimant should file the bond. This statutory requirement was certainly not intended for the benefit of the obligors upon the bond, but for the protection of the obligee. The failure of the obligors, either through neglect or fraud, to give the obligee this additional protection, to which by statute he was entitled, did not forfeit the rights of the obligee under the bond. The action of the defendants in reference to this bond constituted a complete delivery of it to the obligee.

The failure of Salman to file the bond, and the delivery by the marshal of the property seized to the receiver of Rinzler, rather than to the claimant, Salman, may, and perhaps does, prevent us from regarding this bond as a valid statutory bond. The fact, however, that this bond is not valid as a statutory bond, does not impair its validity as a contract, nor prevent its enforcement as a common-law obligation. Ryan v. Webb, 39 Hun, 435, 437; Toles v. Adee, 84 N. Y. 222, 237, 238. As was said in Toles v. Adee, supra:

"When the plaintiff's attorneys consented to the proposition and accepted the undertaking, it became operative and binding, not as a. statutory obligation, but as a common-law agreement between the parties, for the breach of which an action would lie as upon any other assumpsit."

The presence of a seal upon the undertaking removes any question as to its being founded upon a sufficient consideration. When the bond was signed, sealed, and served by the defendant upon the plaintiff's attorney, and accepted and approved by the latter, it was a complete contract, and the fact that it was not approved by a justice of the Municipal Court, and was not filed as required by section 85 of the Municipal Court act, did not make it any the less a contractual obligation. The requirement of section 85 of the Municipal Court act that the claimant may "execute and file with the clerk a bond ·to the plaintiff," etc., is provided, not for the benefit of the obligees, but for the protection of the plaintiff, if the claimant failed to prove that he was the owner of the property. Haywood v. Townsend, 4 App. Div. 246, 38 N. Y. Supp. 517.

The bond was not conditional upon its being filed or approved by a justice of the Municipal Court, and the defendant Salman, who is one of the obligors upon the bond, ought not to be permitted to take advantage of the fact that he did not cause it to be filed or approved by a justice of the Municipal Court. To permit him to do so is to enable him to take advantage of his own wrong. Under the terms of the bond the defendants are liable, unless they establish, in an action upon the bond, that Salman "was the general owner of the property claimed at the time of the seizure." This fact the defendants utterly failed to establish, and consequently the court below properly held them liable upon the bond. The evidence shows, and the trial court has found, that Salman was a party to a fraud, and his failure to file the bond and cause it to be approved was, I think, an effort to reap the benefit of the fraud, and to enable him to repudiate the obligation of his contract, which was expressed in the bond.

The fact that the marshal did not deliver the property to the claimant, but delivered it to the receiver in bankruptcy of Rinzler, who in

turn delivered it to the claimant, in no way relieves Salman from his obligations under the bond which he executed. After the bond was executed, and a copy thereof delivered to the plaintiff's attorney, and the defendant Salman had noticed it for approval, the plaintiff was justified in looking solely to the bond, and was not required to look after the property, which up to that time had been securely held by the lien of his attachment. The fact that the marshal delivered this property to the receiver, and that the receiver, after taking a bond for his own protection from Salman, delivered it to the latter, does not enable Salman to repudiate the obligation he contracted when he signed the bond and delivered a copy thereof, with the intention that it should discharge the property. The roundabout way in which Salman acquired the property was a mere subterfuge, which is so transparent as to clearly reveal Salman's effort to get the property and at the same time avoid his liability upon his undertaking. This purpose being apparent, and Salman having gotten the property, which under the law he could take only in the event of his giving a bond, the court ought not to be astute to hold that, because Salman obtained the property from the marshal indirectly through the receiver, instead of directly from the marshal, and failed to file the bond, as he was required by law to do, he may therefore keep the property and at the same time repudiate the obligation of his bond, although he has not proved his title to it. While the circumstance that Salman obtained the property circuitously, instead of directly, may perhaps make it impossible to hold him upon the statutory bond, it does not in any way impair the force of his common-law obligation.

Nor does the fact that Rinzler, the defendant in that action in which the plaintiff obtained his attachment, was adjudicated a bankrupt, avoid the obligation of these defendants upon the bond, or in any way affect the question involved in the controversy between this plaintiff and these defendants. The liability which the plaintiff is seeking to enforce arises out of the bond, and is dependent upon this common-law obligation. The question of fact to be determined in this action is whether Salman was the owner of the property at the time of its seizure. The fact that the receiver in bankruptcy of Rinzler claimed the property, or that such receiver subsequently transferred any title that he had in the property to Salman, was not material upon the question as to whether Salman was the owner of the property at the time of the seizure.

The contentions now urged by Salman are inconsistent. If the receiver, or Rinzler, was the owner of the property, then Salman had no right to claim it in the attachment proceeding, and was not its owner, and under the bond the defendants are liable to the plaintiff. If the receiver was not the owner of the property, this fact did not establish that Salman was its owner, and, Salman having failed to prove this fact, the defendants were properly held liable upon the bond. The defendants' undertaking was conditioned only upon Salman proving his ownership of the property. The burden of proving ownership was upon Salman. Eisenbud v. Gellert, 26 Misc. Rep. 367, 55 N. Y. Supp. 952; Goldstein v. Goldman, 74 App. Div. 356, 77 N. Y. Supp. 699. This burden was not sustained.

The court below has properly found upon the evidence before it that Salman was not the owner of this property, but merely a party to a fraud designed to enable Rinzler to put the property out of the reach of his creditors, who were honestly entitled to it.

The judgment should be affirmed, with costs.

GILDERSLEEVE, P. J., concurs.

LEHMAN, J. (dissenting). It does not appear from the record whether the bond, upon which this action is brought, was ever approved by a justice of the Municipal Court; but it does appear that the bond was never filed. It further appears that on the 1st day of October, the day intermediate between the service of the notice of justification and the time set for justification, the defendant in the attachment action was adjudicated a bankrupt, and a receiver was appointed of the bankrupt's property, who made a demand on the marshal for the goods. The marshal thereupon transferred title to the goods, which were in storage, to the receiver. The claimant, Salman, still claiming to be entitled to the property involved in the suit and mentioned in his undertaking given to the attaching creditor, claimed it from the receiver and made a demand on him for the property. The receiver, upon some evidence presented to him by Salman of his alleged ownership, released whatever right he had to the goods in question upon Salman executing to him a bond for the protection of the receiver. Upon receiving such bond, the receiver directed that the goods, which were in the storage warehouse and title to which had been transferred to the receiver as above mentioned, be delivered to the claimant, Salman. No order was made by the United States court directing this to be done. The receiver acted upon his own responsibility, for what he deemed the best interests of the estate, feeling that he was secured by the bond given to him. Thereupon Salman obtained possession of the property.

I have taken this statement of the facts verbatim from the opinion of the learned trial justice, and upon these facts he has held that the plaintiff herein may bring an action upon the bond signed by the defendants herein to secure the release of the goods from the marshal. Obviously, the action can be sustained only upon proof of the delivery of the bond and of the breach of its condition. The bond was in form a statutory bond, intended to be made in conformance with section 85 of the Municipal Court act, for the purpose of securing the goods previously attached by the plaintiff. This section requires that the claimant execute and file with the clerk a bond to the plaintiff, with one or more sureties, approved by the marshal or by a justice. The statute provides further that "the marshal must thereupon deliver the property claimed to the claimant." The filing of the bond was not only for the benefit of the plaintiff, but also for the benefit of the debtor, who could bring an action upon the bond if the attachment should thereafter be vacated. It had no efficiency until it was filed, because under the statute the marshal had no right to deliver the goods until the filing and approval was complete.

Nor do I believe that there is any force in the contention that, aside from statutory liability upon the bond, it may be enforced as a common-

law obligation. Delivery to the plaintiff is essential to such a liability. As Mr. Justice SEABURY aptly points out in his citation (5 Cyc. 740):

"The essence of the question whether or not there has been a delivery consists in the intent of the obligor to perfect the instrument and make it at once the absolute property of the obligee."

In all the cases where the filing of the bond has been considered a formality not essential to the validity of the obligation, it seems to me that there was a delivery of a bond with the intention that the bond should immediately be considered a perfect instrument, and that in all the cases the bond could be acted upon, and was in fact acted upon, without further acts or formalities. In the case under consideration, the copy of the bond was delivered to the obligee, but not to the person who was intended to act under that bond, with a notice of justification two days thereafter, and I must consider this notice as a clear expression of intention that the bond was not to be regarded as perfected until that time. It seems to me that the citation of Mr. Justice SEABURY from the opinion of Toles v. Adee, 84 N. Y. 222, shows the distinction between the two cases:

"When the plaintiff's attorneys consented to the proposition and accepted the undertaking, it became operative and binding," etc.

In that case the plaintiff's attorneys waived the requirements of the statute and consented to accept a bond not complying with the formalities of a bail bond as sufficient to obtain the release of the defendant upon an order of arrest. They understood and agreed that the bond was to become immediately effective. In the case under consideration the attorneys did not consent to any proposition, and the bond did not in fact become operative and binding, and was in fact never acted upon. In the case of Haywood v. Townsend, 4 App. Div. 246, 38 N. Y. Supp. 517, the court summarizes the facts:

"The defendants, it appears from the testimony, knew what the bond was for; that without it the trustee, Robert M. Townsend, could not acquire possession of the money that was left by the testatrix for the benefit of the legatees. They signed and executed the bond for the purpose of enabling him to get the money. When they delivered it to him, and left it with him, after having executed it, it was, so far as any act of theirs necessary to be done to fix their liability upon the bond, complete. * * * At the time he delivered a sworn copy of it, as a voucher of his authority and right to receive the trust fund, the bond executed by the defendants was in existence, and its subsequent destruction, after the trustee, upon the faith of its execution and existence, had secured the legacies, cannot alter the liability of the defendants."

If in the case under consideration the bond had been delivered to the marshal, and he had acted upon it without filing, then the cases would be analogous; but the bond herein was never filed, and was never, as far as appears in the record, delivered or shown to the marshal.

In Russell v. Freer, 56 N. Y. 67, as cited in Haywood v. Townsend, supra, the rule is clearly set forth (4 App. Div. 250, 38 N. Y. Supp. 520):

"Having, by signing the bond and giving it to the principal, placed it in the power of the principal to secure the money, and he having done so, it has, so far as the principal and sureties are concerned, served its purpose, and the

defendants should not be permitted to repudiate the bond, to the detriment of the parties it was apparently given to secure."

Conceding, however, for the sake of argument, that there was a delivery of the bond, I fail to find in the record any proof of the breach of the condition, or of any possible detriment to the plaintiff. The condition of the bond is in the form required by section 85 of the Municipal Court act, and for the purposes provided therein; i. e., to obtain possession of the property attached. While the condition of the bond is that the claimant, in case of failure to establish that he was the general owner of the property claimed, shall pay to the plaintiff the value thereof, with interest, yet this condition must be read and interpreted in connection with section 86 of the Municipal Court act, which provides that:

"A judgment for the plaintiff, in an action upon a bond given as prescribed in the last section, must award to him the value of the property seized and delivered to the claimant, with interest thereupon from the time of delivery."

The condition, therefore, is not to pay the value of the property claimed, but the value of the property "seized and delivered" by the marshal to the claimant. The marshal has, however, never delivered any goods to the claimant upon this bond. He delivered the goods to the receiver in bankruptcy before this bond was filed, or could have been filed. The receiver did thereafter deliver the goods to the claimant, but took a new bond from him. After the receiver in bankruptcy was appointed, the plaintiff herein had absolutely no interest in these goods. If they belonged to the debtor, the adjudication in bankruptcy destroyed the lien of his attachment. If they belonged to the claimant, then the claimant was entitled to them. The learned trial justice has found that the claimant was fraudulently attempting to obtain these goods. I think that his finding is amply supported by the evidence, but that fraud should entitle the receiver to recover upon the bond accepted by him, and should not entitle the plaintiff to recover upon this bond. The failure to file the bond herein was the result neither of neglect nor of fraud. The defendant's attorney destroyed the bond after the adjudication of bankruptcy, because at that time the obligee of the bond had no further interest in the goods, and the bond was of no further use.

Judgment should be reversed.